[873 NYS2d 43]

PETER KOWALCHUK et al., Respondents, v MATTHEW STROUP, Appellant.

First Department, February 10, 2009

## APPEARANCES OF COUNSEL

*Burkhart Wexler & Hirschberg, LLP*, Garden City (*Norman B. Arnoff* of counsel), for appellant.

*McCormick & O'Brien, LLP*, New York City (*Liam O'Brien* of counsel), for respondents.

## OPINION OF THE COURT

SAXE, J.

This appeal, concerning a dispute regarding the time at which a negotiated settlement becomes an enforceable contract, requires consideration of some of the most fundamental aspects of the law of contracts: offers, acceptance, and consideration.

### Facts

Plaintiff Evelyn Kowalchuk, an 88-year-old widow, and her son, plaintiff Peter Kowalchuk, had invested in brokerage accounts managed by defendant Matthew Stroup. In December 2005, they commenced an arbitration proceeding before the National Association of Securities Dealers (NASD) asserting that Stroup had fraudulently or negligently handled their accounts, and seeking judgment for losses of $832,000. After the arbitration hearing was completed, but before a decision was rendered, the parties agreed on a settlement. On February 6, 2007, plaintiffs' counsel e-mailed defendant's counsel:

> "As discussed, my clients have agreed to accept Mr. Stroup's settlement offer. The terms of the offer are as follows:

> "Total settlement amount of $285,000 with $125,000 payable upon execution of the settlement paperwork but no later than 20 days. The remainder to be paid in nine equal monthly installments on the 15th of each month beginning on March 15, 2007. Confession of judgment and security interest sufficient to cover the outstanding amounts.

> "We have also agreed to provide you with a letter that you may use in negotiations with Mr. Stroup's insurance carrier.

"ps. Let me know if you would like me to contact the NASD and inform them that we have reached a settlement and will advise them as soon as the settlement is finalized."

Plaintiffs' counsel then sent defendant's counsel a draft settlement agreement. Defendant's counsel responded on February 12 with his own draft, and later that day advised plaintiffs' counsel:

"The insurance company is considering making a dollar contribution to the settlement agreed upon . . . However they want to know the dollar amount of your settlement . . . and I have advised that you have agreed on confidentiality. I would appreciate your waiving this confidentiality . . . I would appreciate your consideration in order to facilitate the settlement."

Plaintiffs' counsel declined to waive confidentiality, but indicated that he had reviewed his adversary's changes, and would respond the next morning with his own. On February 14, defendant's counsel advised:

"My client has executed the settlement agreement, which I will forward to you tomorrow for your clients to execute. If you are agreeable, I would like to advise the NASD tomorrow we have a settlement and/or an agreement in principle that will be documented and formalized shortly."

On February 16, plaintiffs' counsel responded: "Please fax your client's executed agreement to me . . . and notify the NASD. I will forward my clients' executed copies as soon as they are received." That same day, defendant's counsel faxed plaintiff's counsel a "signed and approved settlement agreement," and stated that he would be forwarding to plaintiff's counsel and to the NASD a "confirmation of settlement." He asked that plaintiffs' counsel send him "your signed counterpart." Also that day, defendant's counsel faxed the NASD advising that the arbitration "has been settled," asking that the arbitrators be so advised so that no award be entered.

Meanwhile, on February 15, the NASD had issued its award and sent it by regular mail to respective counsel. It is apparent that both sides' counsel received it after the foregoing faxed exchange. The award was in favor of plaintiffs in the amount of $88,787.50, far less than the settlement amount of $285,000.

On February 20, defendant's counsel, having received a copy of the award, advised plaintiffs' counsel that defendant had

instructed him to "withdraw the offer of settlement," and advised the NASD that defendant intended to honor the award and had withdrawn the "offer of settlement" because he "did not receive the settlement and release documents executed by [plaintiffs] accepting the settlement."

On February 21, by fax and Fed Ex overnight mail, plaintiffs' counsel sent defendant's counsel a copy of the settlement agreement signed by plaintiffs. The cover letter acknowledged having been advised that defendant did not intend to honor the settlement agreement, and asserted that defendant had clearly approved its terms, and reserved plaintiffs' rights to "enforce the agreement as written."

On March 23, plaintiffs' counsel advised defendant's counsel that defendant was in default of the first payment of $125,000 due under the terms of the settlement agreement, and offered an opportunity to cure the default. When defendant did not pay, plaintiffs commenced this action for breach of contract.

Defendant moved to dismiss pursuant to CPLR 3211 (a) (1), (2) and (5) and for summary judgment dismissing the complaint, arguing, essentially, that there was no binding settlement agreement. The motion court, upon converting the dismissal motion to one for summary judgment, searched the record and granted summary judgment to plaintiffs.

## Discussion

The motion court correctly awarded summary judgment to plaintiffs, properly holding that, based upon the submissions, it was established as a matter of law that the parties had entered into a binding and enforceable settlement agreement prior to defendant's purported revocation, and properly rejecting defendant's contention that he had withdrawn his offer before the offer was accepted. That the written formulation of the agreement had not yet been signed by plaintiffs at the time defendant sought to repudiate it did not in any way refute its existence or terms.

To establish the existence of an enforceable agreement, a plaintiff must establish an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound (22 NY Jur 2d, Contracts § 9). That meeting of the minds must include agreement on all essential terms (id. § 31).

The February 6 e-mail sent by plaintiffs' counsel establishes that defendant made an offer, including all the essential material terms of that offer, and that plaintiffs accepted the offer. If

any confirmation were needed that plaintiffs' counsel had accurately framed and characterized defendant's offer, the subsequent e-mails satisfy any such concerns.

Nevertheless, defendant contends that the offer was revoked before it was accepted, relying on the fact that plaintiffs had not yet signed the formal writing by the time they heard of the NASD award, after which defendant quickly communicated an intent to revoke his offer. This contention raises the issue of how an offer is effectively accepted.

While an offer normally may be revoked at any time prior to acceptance, the moment of acceptance is the moment the contract is created. "As a general rule, in order for an acceptance to be effective, it must comply with the terms of the offer and be clear, unambiguous and unequivocal" (*King v King*, 208 AD2d 1143, 1143-1144 [1994], citing 21 NY Jur 2d, Contracts § 53, at 470, and 2 Lord, Williston on Contracts § 6:10, at 68 [4th ed]). Inasmuch as there was nothing unclear, ambiguous or equivocal about plaintiffs' February 6 e-mail responding to defendant's offer, it constituted an effective acceptance.

In order to treat the contract formation process employed here as ineffective to bind him, as well as to contend that his offer was revoked prior to any proper acceptance, defendant relies on the rule that "if the parties contemplate a reduction to writing of their agreement before it can be considered complete, there is no contract until the writing is signed" (*ABC Trading Co., Ltd. v Westinghouse Elec. Supply Co.*, 382 F Supp 600, 601 [ED NY 1974], quoting Williston on Contracts § 28, at 66-67 [3d ed]; *see generally* 1 Lord, Williston on Contracts § 4:11 [4th ed]). Defendant contends that because the formal writing prepared for both parties' signature contained language making reference to it being "complete and binding" upon signature of all the parties, that writing indicates the parties' intent not to be bound until the point that all parties have signed the document.

> " 'It is well settled that, if the parties to an agreement do not intend it to be binding upon them until it is reduced to writing and signed by both of them, they are not bound and may not be held liable until it has been written out and signed' " (*Jordan Panel Sys. Corp. v Turner Constr. Co.*, 45 AD3d 165, 166 [2007], quoting *Scheck v Francis*, 26 NY2d 466, 469-470 [1970]).

Under New York law, "when a party gives forthright, reasonable signals that it means to be bound only by a written agreement," that intent is honored (*see Jordan Panel Sys. Corp.*, 45 AD3d at 169, quoting *R.G. Group, Inc. v Horn & Hardart Co.*, 751 F2d 69, 75 [2d Cir 1984] [applying New York law]).

This rule has been explained as distinguishing between a "preliminary agreement contingent on and not intended to be binding absent formal documentation," which is not enforceable, and a "binding agreement that is nevertheless to be further documented," which is enforceable with or without the formal documentation (*Hostcentric Tech., Inc. v Republic Thunderbolt, LLC*, 2005 WL 1377853, *5, 2005 US Dist LEXIS 11130, *17 [SD NY 2005]). The former is established by a showing that a party made an explicit reservation that there would be no contract until the full formal document is completed and executed. But, the mere fact that the parties intended to draft formal settlement papers is *not alone* enough to imply an intent not to be bound except by a fully executed document (*id.*).

The federal courts applying this rule have set out factors to consider in determining whether the parties intended not to be bound without an executed writing:

> "(1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing" (*Winston v Mediafare Entertainment Corp.*, 777 F2d 78, 80 [2d Cir 1985]).

In *Winston*, the parties had reached an agreement in principle, and the plaintiff's counsel wrote to the district judge handling the litigation, asking that a scheduled conference be postponed "subject to consummation of the proposed settlement" (*id.* at 81). While four draft agreements were prepared, the defendant had signed the third; the plaintiff claimed the fourth was binding. The court held that there was no binding agreement, pointing out that the language used in drafts of the agreements and counsel's correspondence, as well as the acts of the parties, all tended to reflect an intent to not be bound until a written agreement was fully executed (*id.*). It was particularly significant that counsel's correspondence repeatedly used the terms "proposed settlement" and "proposed agreement" (*id.*).

In contrast, in *Delyanis v Dyna-Empire, Inc.* (465 F Supp 2d 170 [ED NY 2006]), the court found that the parties had entered into an enforceable agreement. The parties had agreed to the terms of a settlement while before a mediator, but the mediator's handwritten recording of their agreement affirmatively stated that the handwritten document was not meant to be binding. Nevertheless, when, a few days later, the mediator asked whether he could notify the court that the matter had been settled, the plaintiff's counsel answered affirmatively. When the plaintiff thereafter realized that the settlement amount was taxable and declined to settle the matter on the agreed terms, the defendants sought to enforce the settlement. The *Delyanis* court, while observing that the mediator's handwritten draft was not binding because of the included language that the parties did not intend to be bound by it, held that the subsequent actions of the plaintiff's counsel rendered the agreement binding on the plaintiff (*id.* at 174).

Here, none of defendant's correspondence indicated an intent not to be bound until an agreement was executed by both parties. Indeed, defendant's counsel affirmatively notified the NASD that a settlement was reached, without any assurances that plaintiffs had executed the agreement; his letter to the NASD stated "Please be advised the above captioned arbitration has been settled." The inclusion, in the formal document intended to encompass the terms of an agreement, of the language that "[t]he Agreement is complete and binding upon its execution by all signatories" is simply insufficient to be treated as an explicit reservation that the parties should not be bound by the terms of their agreement until the written agreement is fully executed. Notably, there is no indication that at any time in the course of arriving at the terms of the agreement was it proposed that the parties not be bound until a written agreement was fully executed.

Defendant also relies on the rule that in the absence of consideration, an offer to enter into a contract may be revoked prior to acceptance (*see Friedman v Sommer*, 63 NY2d 788, 789 [1984]; *Evans v 2168 Broadway Corp.*, 281 NY 34 [1939]), reasoning that because his offer was made without consideration, he was entitled to revoke it. However, this rule is simply inapplicable to the present circumstances. According to the Restatement, the rule arose because under the common law, offers may be revoked prior to acceptance, but in certain situations an offeree should be provided with a "dependable basis for decision"

during which the offeror's power to revoke is limited or eliminated (*see* Restatement [Second] of Contracts § 25, Comment *b*). This rule therefore developed to cover option contracts, through which an offer, accompanied by some form of consideration, may protect an offeree, by entitling the offeree to treat the offer as irrevocable within specific time constraints.

This rule is particularly irrelevant here, in view of our conclusion that defendant's offer was accepted prior to the purported revocation, so as to create a binding agreement between the parties. In fact, the consideration for a bilateral contract such as this one, in which promises are exchanged, consists of the acts mutually promised (*see Moers v Moers*, 229 NY 294, 301 [1920], citing 1 Williston on Contracts § 103f). Plaintiffs' agreement to withdraw the claim they made to the NASD, and defendant's agreement to pay the money, constituted fair consideration.

Even if the e-mails had failed to evidence the existence of a contract, the formal written document signed just by defendant would have sufficed to establish the existence of the parties' agreement, since "an unsigned contract may be enforceable, provided there is objective evidence establishing that the parties intended to be bound" (*see Flores v Lower E. Side Serv. Ctr., Inc.*, 4 NY3d 363, 369 [2005]), unless, of course, the parties have agreed that their contract will not be binding until executed by both sides. As the motion court observed, the provision in the Settlement Agreement that "[t]he Agreement is complete and binding upon its execution by all signatories" is not the equivalent of a provision that it is *not* binding *until* it has been so executed. In any event, the parties' conduct establishes without any question that both sides understood and intended that the dispute had been settled.

Plaintiffs were properly awarded attorneys' fees. The costs provision of the settlement agreement, which is enforceable as the formal documentation of the already binding oral agreement, specifically provides for attorney's fees "[i]n the event that any party is required to bring any action against any other party to enforce the terms of this Agreement."

We have considered defendant's remaining contentions and find them unavailing.

Accordingly, the judgment of the Supreme Court, New York County (Ira Gammerman, J.H.O.), entered October 26, 2007, awarding plaintiffs the principal sum of $285,000, and bringing up for review an order, same court and J.H.O., entered October

17, 2007, which, inter alia, granted plaintiffs summary judgment and directed a reference as to attorneys' fees, should be affirmed, with costs.

ANDRIAS, J.P., GONZALEZ, CATTERSON and ACOSTA, JJ., concur.

Judgment, Supreme Court, New York County, entered October 26, 2007, affirmed, with costs.