10-0415-cv
Rubinstein v. Clark & Green, Inc.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 12ᵗʰ day of October, two thousand ten.

PRESENT:   ROBERT D. SACK,
                      BARRINGTON D. PARKER,
                      REENA RAGGI,
                                 *Circuit Judges*.

-----------------------------------------------------------------------
RICHARD P. RUBINSTEIN, KATHERINE KOLBERT,
                                 *Plaintiffs-Appellants*,

                      v.                                                                    No. 10-0415-cv

CLARK & GREEN, INC.,
                                 *Defendant-Appellee*.
-----------------------------------------------------------------------

APPEARING FOR APPELLANTS:        JON H. ADAMS (Vincent L. DeBiase, *on the brief*), Corbally, Gartland and Rappleyea, LLP, Poughkeepsie, New York.

APPEARING FOR APPELLEE:        JASON L. SHAW, Whiteman Osterman & Hanna LLP, Albany, New York.

Appeal from the United States District Court for the Northern District of New York (Lawrence E. Kahn, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court entered on January 19, 2010, is AFFIRMED.

Plaintiffs Richard P. Rubinstein and Katherine Kolbert appeal from an award of summary judgment in favor of defendant Clark & Green, Inc. on their breach of contract claim. We review an award of summary judgment de novo, viewing the facts in the light most favorable to the non-moving party. See Havey v. Homebound Mortg., Inc., 547 F.3d 158, 163 (2d Cir. 2008). Summary judgment is appropriate where the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also FDIC v. Great Am. Ins. Co., 607 F.3d 288, 292 (2d Cir. 2010). While we will not uphold an award of summary judgment in favor of defendant if the evidence is sufficient to permit a reasonable jury to find for plaintiffs, they must point to more than a "scintilla" of supporting evidence to defeat summary judgment. Havey v. Homebound Mortg., Inc., 547 F.3d at 163; see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). We assume the parties' familiarity with the facts and the record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

Plaintiffs' breach of contract claim is based solely upon defendant's alleged failure to complete design work on plaintiffs' planned residence in Hillsdale, New York, in accordance with a proposed work schedule. Plaintiffs contend that the district court erred in concluding that the parties did not enter into a binding written contract embodied in emails exchanged by the parties at the outset of the project. In the alternative, plaintiffs argue that the district court erred in concluding that the parties did not enter into a binding preliminary agreement. Whether a contract existed is a question of law that we review de novo. See Shann v. Dunk, 84 F.3d 73, 77 (2d. Cir. 1996). It is undisputed that New York law governs this action.

1.    The Binding Contract Claim

While an exchange of emails may constitute a binding contract under New York law, see, e.g., Stevens v. Publicis, S.A., 50 A.D.3d 253, 255-56, 854 N.Y.S.2d 690, 692 (1st Dep't 2008), that is not the case "where the parties contemplate further negotiations and the execution of a formal instrument," Adjustrite Sys., Inc. v. GAB Bus. Servs., Inc., 145 F.3d 543, 547 (2d Cir. 1998). Here, the emails at issue plainly establish the parties' intent to execute a formal contract beyond their email exchange.

In a November 22, 2005 email, Rubinstein asked Alan Clark, one of defendant's principals, for his "opinion as to a realistic schedule" for the contemplated project and for "a copy of the . . . written agreement you would propose we use for engaging yourself and your firm." Email from Rubinstein to Clark (Nov. 22, 2005, 2:27 AM EST). Responding the

3

same day, Clark laid out a proposed work schedule, which he characterized as "a little tight," observing, "[w]e can talk about all this in more detail." Email from Clark to Rubinstein (Nov. 22, 2005, 11:06 AM EST). More important for purposes of revealing the parties' intent regarding formation of a binding contract, Clark stated that "[t]he agreement I would like to use is an AIA Agreement B155," referring to a form agreement prepared by the American Institute of Architects. Id.

In a November 29, 2005 email, Rubinstein thanked Clark "for sending the possible schedule and sample contract." Email from Rubinstein to Clark (Nov. 29, 2005, 2:26 PM EST). On December 6, 2005, Rubinstein emailed again, stating that he "would like to start working with" Clark & Green, but that he had "no time to get into" contract terms at that time "so I would like to target completing a more comprehensive understanding in writing before we get to contract documents stage if ok with you." Email from Rubinstein to Clark (Dec. 6, 2005, 1:01 PM EST). Later that day, Clark responded that he would "fill in the B155 Contract and send it down for your signatures." Email from Clark to Rubinstein (Dec. 6, 2005, 3:41 PM EST). Rubinstein immediately replied, reiterating his desire to defer entering into a formal written contract:

> I don't have the time or inclination or see the need to get into doing a contract until we are further along. . . . Also by waiting on paperwork we will have some mileage under our belts in terms of a relationship and will have a sense of how specifically we need to document this and that.

Email from Rubinstein to Clark (Dec. 6, 2005, 4:15 PM EST).

4

This correspondence clearly establishes the parties' intent to negotiate further and enter into a formal written contract. Plaintiffs' argument that the November–December 2005 email exchange by itself constitutes a binding written contract thus fails as a matter of law. See Kowalchuk v. Stroup, 61 A.D.3d 118, 123, 873 N.Y.S.2d 43, 47 (1st Dep't 2009) ("[W]hen a party gives forthright, reasonable signals that it means to be bound only by a written agreement, that intent is honored." (internal quotation marks omitted)).

2.     The Preliminary Agreement Claim

In the alternative, plaintiffs argue that the parties' email exchange constitutes a fully binding preliminary agreement. See Adjustrite Sys., Inc. v. GAB Bus. Servs., Inc., 145 F.3d at 548. New York law recognizes two types of preliminary agreement: under the first, sometimes called a "binding preliminary commitment," "the parties are bound only to make a good faith effort to negotiate and agree upon the open terms and a final agreement," with no further obligation; the second, alleged by plaintiffs in the instant case, is a "fully binding preliminary agreement," which is "preliminary only in form," and "binds both sides to their ultimate contractual objective." Id. (recognizing preliminary agreement as binding "when the parties agree on all the points that require negotiation (including whether to be bound) but agree to memorialize their agreement in a more formal document"). Four factors inform our review of whether a fully binding preliminary agreement exists:

> (1) whether there has been an express reservation of the right not
> to be bound in the absence of a writing; (2) whether there has
> been partial performance of the contract; (3) whether all of the
> terms of the alleged contract have been agreed upon; and (4)

5

> whether the agreement at issue is the type of contract that is usually committed to writing.

Id. at 549.

The first factor weighs in favor of defendant. While there was no express reservation of the right not to be bound in the parties' emails, this fact "is not dispositive." Brown v. Cara, 420 F.3d 148, 154 (2d Cir. 2005) (internal quotation marks). Here, both parties expressed their intention to enter into a formal agreement after further negotiation. See id. at 155 (observing that "absence of an expressed reservation is of little significance, particularly in view of the . . . statement that a formal contract is forthcoming"). Significantly, the email correspondence contains neither an express statement that there was a binding agreement nor an express manifestation by either party of an intent to be bound by the terms discussed. See Adjustrite Sys., Inc. v. GAB Bus. Servs., Inc., 145 F.3d at 549 (finding no binding preliminary agreement where "[t]he Agreement does not expressly state that it was a binding agreement nor does it provide any express manifestation that the parties were bound by its terms").

Plaintiffs argue that the second factor, partial performance, weighs in their favor because defendant completed several months of design work for which plaintiffs paid at rates discussed in the initial email exchange. While this course of conduct might support a conclusion that the parties reached at least a preliminary agreement as to how defendant would be paid for completed work, it does not establish the parties' agreement to be bound to the work schedule presented in Clark's November 22, 2005 email.

6

The third factor – the existence of open items for negotiation – weighs in favor of defendant. Indeed, Rubinstein himself provides clear evidence of this fact by stating in his December 6, 2005 email that "by waiting on paperwork we will have some mileage under our belts in terms of a relationship and will have a sense of how specifically we need to document this and that." Email from Rubinstein to Clark (Dec. 6, 2005, 4:15 PM EST). Moreover, the form contract proposed by defendant covered a number of significant topics not discussed in the email correspondence, including the scope of defendant's responsibilities during the construction phase of the project, how defendant's expenses and costs would be reimbursed, and the consequences of early termination of the agreement by either party. In the absence of an agreement on these and other terms, it cannot be said that "all of the terms of the alleged contract [were] agreed upon" in the parties' initial email exchange. Adjustrite Sys., Inc. v. GAB Bus. Servs., Inc., 145 F.3d at 549.

The fourth factor – whether the agreement at issue is the type of contract that is usually committed to writing – also weighs in defendant's favor. Indeed, plaintiffs do not, and cannot, suggest otherwise in light of their email exchange about using a standard contract form prepared by the American Institute of Architects and made available to its members for setting forth the terms of a client-architect relationship. The cost, duration, and complexity of the instant project – with a budget of up to $1.5 million and spanning several phases over more than a year – also indicate that a formal document would have been appropriate.

In sum, three of the four Adjustrite factors strongly support a conclusion that the

7

parties did not intend to be bound by the proposed work schedule in the absence of a formal contract. The remaining factor – partial performance – is not sufficiently probative on the issue of the schedule to raise a genuine issue of fact for trial. In light of the foregoing, "no reasonable factfinder could conclude, on this record and in the face of the objective documentary evidence, that the parties agreed on all material elements of the transaction, intended to be fully bound . . . , and considered [the contemplated formal agreement] to be [an] unnecessary formalit[y]." Adjustrite Sys., Inc. v. GAB Bus. Servs., Inc., 145 F.3d at 551. Plaintiffs' breach of contract claim therefore fails as a matter of law, and summary judgment was properly entered in favor of defendant.

We have considered plaintiffs' remaining arguments on appeal and conclude that they are without merit. Accordingly, the January 19, 2010 judgment of the district court is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court

8