Matter of Philadelphia Ins. Indem. Co. v Kendall (2021 NY Slip Op 04284)





Matter of Philadelphia Ins. Indem. Co. v Kendall


2021 NY Slip Op 04284


Decided on July 08, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 08, 2021
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Rolando T. Acosta
Sallie Manzanet-Daniels Peter H. Moulton Saliann Scarpulla


Index No. 657200/19 Appeal No. 13756 Case No. 2020-02752 

[*1]In the Matter of Philadelphia Insurance Indemnity Company, Petitioner-Appellant,
v
Erika Kendall, Respondent-Respondent.



Petitioner appeals from the judgment of the Supreme Court, New York County (Lynn R. Kotler, J.), entered May 27, 2020, denying the petition to enforce a settlement agreement, direct respondent to execute a certain Release and Trust Agreement, and vacate an arbitration award, and dismissing the proceeding.




White Werbel & Fino, LLP, New York (Matthew I. Toker and Shelly K. Werbel of counsel), for appellant.
Law Offices of Bryan Barenbaum, Brooklyn (Huy (Tom) Le of counsel), for respondent.



MOULTON, J. 


This appeal concerns the certitude of settlements effected via email. Supreme Court held that an apparent email settlement of respondent's underinsured motorist arbitration claim was invalid for two reasons. First, the court found that it was unclear whether respondent's attorney retyped his name on his email agreeing to the settlement. His name did appear in what appears to be a prepopulated block containing his contact information at the end of the email. The motion court, in accord with precedent of this Court, found that the retyping of a name is required for an email to be "subscribed" and therefore a binding stipulation under CPLR 2104. The second basis for the court's ruling was that the email correspondence did not contain all the material terms of the settlement. We now reverse, and write to clarify that the transmission of an email, and not whether an email "signature" can be shown to be retyped, is what determines that a settlement stipulation has been subscribed for purposes of CPLR 2104.
On June 6, 2014, respondent Erika Kendall was driving her employer's car when a motor vehicle owned and operated by Khaliah T. Martin came into contact with respondent's vehicle. Martin carried automobile liability insurance with policy limits in a lesser amount than those maintained by respondent's employer, which was insured by petitioner-appellant Philadelphia Insurance Indemnity Company (Philadelphia). Kendall settled her personal injury claim against Martin, receiving the full policy amount of $25,000. Kendall then made a claim under the Supplementary Underinsured Motorist (SUM) benefit provision in the employer's automobile policy with Philadelphia. Kendall and Philadelphia proceeded to arbitration before the American Arbitration Association on Kendall's claim for SUM benefits. The arbitration hearing was held on August 15, 2019. Before, during, and after the arbitration hearing, the parties sought to settle Kendall's claim.
The arbitrator rendered her decision on September 16, 2019, awarding Kendall $975,000.[FN1] The same day, the decision was emailed to Kendall's counsel and faxed to Philadelphia's counsel. However, neither counsel received the decision and they continued to negotiate.
On September 19, 2019, the parties reached an agreement to settle the dispute for $400,000. On that day, respondent's counsel emailed petitioner's counsel: "Confirmed -we are settled for 400K." Below this appeared "Sincerely," followed by counsel's name [*2]and contact information. Shortly thereafter, petitioner's counsel emailed in reply, attaching a general release, styled a "Release and Trust Agreement," and saying, "Get it signed quickly before any decision comes in, wouldn't want your client reneging." Respondent's counsel answered, "Thank you. Will try to get her in asap." This email concluded with the same valediction, name, and contact information as had respondent's counsel's earlier email.
After respondent's counsel received the arbitrator's decision and before respondent signed the Release and Trust Agreement, counsel indicated that he would not proceed with the $400,000 settlement and demanded payment of the $975,000 awarded by the arbitrator. Petitioner thereupon brought this special proceeding to enforce the settlement agreement, and to vacate the arbitral award.
Supreme Court denied relief, finding that it did not appear that respondent's attorney had subscribed his email for purposes of CPLR 2104 by retyping his name in addition to his prepopulated contact information block. Respondent's counsel did not actually represent to the court that the contact information block was prepopulated, but the court implicitly placed the burden on Philadelphia to prove that counsel retyped his name. The court also found that Kendall's failure to sign the release was a necessary occurrence to finalize the settlement, and that this fact was recognized by Philadelphia's counsel's email in which she urged that Kendall's counsel get her to sign the release quickly, lest she "reneg[e]."
DISCUSSION
CPLR 2104, entitled "Stipulations," reads in pertinent part: "An agreement between parties or their attorneys relating to any matter in an action . . . is not binding upon a party unless it is in a writing subscribed by him or his attorney . . . ." The Court of Appeals has said that "[t]he plain language of the statute directs that the agreement itself must be in writing, signed by the party (or attorney) to be bound" (Bonnette v Long Is. Coll. Hosp., 3 NY3d 281, 286 [2004]).[FN2]
The Court of Appeals has not opined on whether emails can satisfy CPLR 2104. In 1996, the Court of Appeals did find that a preprogrammed name on a fax transmission did not fulfill the subscription requirement (see Parma Tile Mosaic & Marble Co. v Estate of Short, 87 NY2d 524 [1996]). However, the Parma court wrote in a different era, when paper records were still an important modality, maybe the most important modality, of recording information in law and business. Since that time, the electronic storage of records has become the norm, email has become ubiquitous, and statutes allowing for electronic signatures have become widespread.[FN3] For these reasons, and those that follow, we find that Parma is not controlling.
Supreme Court relied on the Second Department's decision in Forcelli v Gelco Corp. (109 AD3d 244 [2d Dept 2013]). Forcelli is in accord with this Court's precedent, and we have cited it as persuasive authority (see Jimenez [*3]v Yanne, 152 AD3d 434, 434 [1st Dept 2017]). In Forcelli the plaintiff reached an agreement with the defendant to settle his personal injury case while the latter's summary judgment motion was pending, and the parties' counsel exchanged emails confirming that the plaintiff's counsel had accepted the offer and would prepare the release for the plaintiff to sign (109 AD3d at 245-246). The same day that the court granted the defendant's motion for summary judgment dismissing the case, the plaintiff's counsel sent the requested documents to the defendant's counsel (id. at 246-247). The defendant then refused to proceed with the settlement (id. at 247).
The Second Department held that the parties' counsels' emails created a binding settlement agreement (id. at 248-251). As for CPLR 2104's subscription requirement, the Court held that the defendant's counsel's email containing her printed name at the end thereof supported the conclusion that she effectively signed the email message:
"we note that the subject email . . . ended with . . . , 'Thanks Brenda Greene,' which appears at the end of the email text. This indicates that the author purposefully added her name to this . . . email message, rather than a situation where the sender's email software has been programmed to automatically generate the name of the email sender, along with other identifying information, every time an email . . . is sent" (id. at 251). The rule espoused by Forcelli and our own precedent is that an email in which the party's or its attorney's name is retyped at the end of an email is sufficiently subscribed for purposes of CPLR 2104.
Conversely, cases have found that an email in which a party's or its attorney's name is prepopulated in the email is not sufficiently subscribed for purposes of CPLR 2104 (see Bayerische Landesbank v 45 John St. LLC, 102 AD3d 587, 587 [1st Dept 2013], lv dismissed 22 NY3d 926 [2013]; see also LIF Indus., Inc. v Fuller, 2015 WL 1744814, *6 [Sup Ct, NY County, Apr. 16, 2015, Scarpulla, J., index No. 116411/10]).
We now hold that this distinction between prepopulated and retyped signatures in emails reflects a needless formality that does not reflect how law is commonly practiced today. It is not the signoff that indicates whether the parties intended to reach a settlement via email, but rather the fact that the email was sent. Since 1999, New York State has joined other states in allowing, in most contexts, parties to accept electronic signatures in place of "wet ink" signatures. Section 304(2) of New York's Electronic Signatures and Records Act (ESRA) provides: "unless specifically provided otherwise by law, an electronic signature may be used by a person in lieu of a signature affixed by hand. The use of an electronic signature shall have the same validity and effect as the use of a signature affixed by hand." Moreover, the statutory definition of what constitutes an "electronic signature" is extremely broad under the ESRA, and includes any[*4]"electronic sound, symbol, or process, attached to or logically associated with an electronic record and executed or adopted by a person with the intent to sign the record" (State Technology Law § 302[a]). We find that if an attorney hits "send" with the intent of relaying a settlement offer or acceptance, and their email account is identified in some way as their own, then it is unnecessary for them to type their own signature. This rule avoids unnecessary delay caused by burden-shifting "swearing contests over whether an individual typed their name or it was generated automatically by their email account" (Princeton Indus. Prods., Inc. v Precision Metals Corp., 120 F Supp 3d 812, 820 [ND Ill 2015]).
An intuitive concern expressed by some courts is that email's ubiquity and ease appears to undercut its intentionality. The Second Department in Forcelli, and other courts that have required a retyped signature (see Rawald v Dormitory Auth. of the State of N.Y., 70 Misc 3d 1217[A] 2021 NY Slip Op 50114 [u] [Sup Ct, NY County 2021]), have expressed unease about the casual nature of email. It is fair to say that most email users have on occasion sent emails that they did not mean to transmit, or that they regretted soon after transmission. However, here we are considering a specific subcategory of email on a subject freighted with ethical obligations. A lawyer has ethical obligations to communicate all settlement offers to a client and to counsel the client on the consequences of settlement. New York's Rules of Professional Conduct (22 NYCRR 1200.0) rule 1.2(a) states that "[a] lawyer shall abide by a client's decision whether to settle a matter." Rule 1.4(a)(iii) requires a lawyer to "promptly inform the client of . . . material developments in the matter including settlement or plea offers." These ethical obligations help to ensure that an attorney considers their authority before communicating settlement offers and acceptances to opponents, whatever the mode of communication.[FN4]
While we jettison the requirement that a party or a lawyer retype their name in email to show subscription, that does not mean that every email purporting to settle a dispute will be unassailable evidence of a binding settlement.
First, there may be issues of authentication. Email accounts can be hacked. An email from an attorney's account is presumed to be authentic, but that is a rebuttable presumption. Just as a party may attack a hardcopy settlement offer or acceptance as a forgery, a party that claims an email was the product of a hacker (or of artificial intelligence, or of some other source) may rebut its authenticity.
Second, an email settlement must, like all enforceable settlements, set forth all material terms. That condition is satisfied here where the sole issue is how much respondent would accept in settlement of her SUM claim. Respondent argues that the settlement was conditioned on the respondent signing the release. We disagree. The Release and Trust Agreement [*5]was to be further documentation of the binding agreement constituted by the parties' counsel's emails agreeing to settle respondent's claim for $400,000 (see Kowalchuk v Stroup, 61 AD3d 118, 123 [1st Dept 2009]), rather than something on which that binding agreement was contingent (see Trolman v Trolman, Glaser & Lichtman, P.C., 114 AD3d 617, 618 [1st Dept 2014], lv denied 23 NY3d 905 [2014]; Shah v Wilco Sys., Inc., 81 AD3d 454 [1st Dept 2011], lv dismissed 17 NY3d 901 [2011]). The material term of the parties' agreement to settle respondent's claim being the sum of money that petitioner would pay respondent, respondent's execution of a general release was essentially a ministerial condition precedent to payment (see CPLR 5003-a[a]; Anghel v Utica Mut. Ins. Co., 164 AD3d 1294, 1296 [2d Dept 2018]; compare Teixeira v Woodhaven Ctr. of Care, 173 AD3d 1108 [2d Dept 2019] [email exchange that included "'consider it settled'" did not show mutual accord where settlement was subject to resolution of related proceeding in Surrogate's Court]).
Respondent's remaining arguments are without merit. Her reliance on Philadelphia's counsel's email urging speed in executing the release to avoid respondent "reneging" is misplaced. The email exchange exhibits offer and acceptance; in this context, an expression of concern that a party might renege presupposes the existence of an agreement. Additionally, the doctrine of mutual mistake is not applicable where the existence of an arbitral award was easily ascertainable before entering into the settlement (see P.K. Dev. v Elvem Dev. Corp., 226 AD2d 200 [1st Dept 1996]).
Accordingly, the judgment of the Supreme Court, New York County (Lynn R. Kotler, J.), entered May 27, 2020, denying the petition to enforce a settlement agreement, direct respondent to execute a certain Release and Trust Agreement, and vacate an arbitration award, and dismissing the proceeding, should be reversed, on the law, without costs, the proceeding reinstated and the petition granted.[FN5]
Judgment, Supreme Court, New York County (Lynn R. Kotler, J.), entered May 27, 2020, reversed, on the law, without costs, the proceeding reinstated and the petition granted.
Opinion by Moulton, J. All concur.
Acosta, P.J., Manzanet-Daniels, Moulton, Scarpulla, JJ.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: July 8, 2021



Footnotes

Footnote 1: This amount equaled the SUM policy limit of $1 million, minus the $25,000 Kendall recovered from Martin.

Footnote 2: Although CPLR 2104 says subscribed, not signed, subscription is defined as "[t]he act of signing one's name on a document; the signature so affixed" (Black's Law Dictionary 1655 [10th ed 2014]). Additionally, while CPLR 2104 refers to agreements "relating to any matter in an action," it applies to settlement agreements in arbitrations (see Kleinmann v Bach, 239 AD2d 861, 862 [3d Dept 1997]). While some commentators have cast some doubt on that point (see Thomas F. Gleason, Practice Commentaries, McKinney's Cons Laws of NY, CPLR C2104:7), the parties do not dispute that CPLR 2104 applies in this case and we agree.
Footnote 3: The federal Electronic Signatures in Global and National Commerce (E-Sign) Act was passed in 2000 (15 USC § 7001). At the same time, the States began to enact statutes based on the Uniform Electronic Transmissions Act (see Daniel C. Katzman, Are E-Signatures E-Nough?, 109 Illinois Bar Journal 29 [2021]).
Footnote 4: We are not faced here with an attorney who has a draft settlement proposal or acceptance sitting in their email drafts folder which they send inadvertently with an errant key stroke. In the instant case, the follow up email sent by respondent's counsel would fatally undermine that argument, and he makes no assertion to the contrary. However, it is certainly possible that a lawyer may send a settlement email inadvertently, just as they may inadvertently produce privileged material in discovery. We need not determine at this time the showing necessary to claw back a settlement email allegedly sent in error. Certainly, a part of that showing will be prompt action to rectify the error, just as prompt action strengthens an assertion of inadvertent disclosure.

Footnote 5: The Court acknowledges the research assistance of Law Student Intern Matthew Pintea.