U.S. Bank N.A. v Allison (2025 NY Slip Op 51655(U))

[*1]

U.S. Bank N.A. v Allison

2025 NY Slip Op 51655(U)

Decided on October 17, 2025

Supreme Court, Suffolk County

Hackeling, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on October 17, 2025

Supreme Court, Suffolk County

U.S. Bank National Association, AS TRUSTEE FOR

ASSET BACKED SECURITIES CORPORATION HOME EQUITY LOAN TRUST,
SERIES OOMC 2006-HE3, ASSET BACKED PASS-THROUGH CERTIFICATES,

SERIES OOMC 2006-HE3, Plaintiff,

against

Kenneth Allison a/k/a KENNETH S. ALLISON, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF CHERYL ALLISON a/k/a CHERYL ARLENE WILSON; HENRY WILSON; KIMARA ALLISON; RENEE WILSON; JASMINE WILSON; ANGELICA SAWYER WILSON; LAJESS SAWYER WILSON; JESSE SAWYER WILSON; BRENDA WILSON; DARIUS ALLISON; ALICEA ALLISON a/k/a ALICIA ALLISON a/k/a ALICEA V. ALLISON; PECONIC BAY MEDICAL CENTER; INCORPORATED VILLAGE OF ISLANDIA; CLERK OF THE SUFFOLK COUNTY TRAFFIC & PARKING VIOLATIONS AGENCY; CLERK OF THE SUFFOLK COUNTY DISTRICT COURT; NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE; CLERK OF THE RIVERHEAD TOWN COURT; STATE OF NEW YORK, Defendants.

Index No. 612871/2022

PLAINTIFF'S ATTORNEY
Logs Legal Group LLP
175 Mile Crossing Boulevard
Rochester, New York 14624

ATTORNEY FOR DEFENDANT KENNETH ALLISON
James F. Misiano, P.C.
130 Third Avenue
Brentwood, New York 11717

C. Stephen Hackeling, J.

Upon reading and filing of plaintiff U.S. Bank's motion dated March 27, 2025 [NYSCEF [*2]Doc Nos. 65-82]; and defendant Kenneth Allison's motion dated July 14, 2025 [NYSCEF Doc Nos. 83-92]; and a hearing having been held on September 24, 2025; and due deliberation and consideration having been had thereon, it is

ORDERED that plaintiff's application (Mot. Seq. No. 003) is denied in its entirety; and it is further

ORDERED that defendant's application (Mot. Seq. No. 004) is granted and the case dismissed without prejudice.

Plaintiff U.S. Bank National Association, as Trustee for Asset Backed Securities Corporation Home Equity Loan Trust, Series OOMC 2006-HE3, Asset Backed Pass-Through Certificates, Series OOMC 2006-HE3 (hereafter the "Bank") moves this Court for an Order confirming the Referee's report and entering a Judgment of Foreclosure and Sale (Mot. Seq. No. 003, NYSCEF Doc Nos. 65-82); defendant Kenneth Allison individually and as the Administrator of the Estate of Cheryl Allison, opposes said relief and additionally cross moves for an Order dismissing the Bank's complaint (Mot. Seq. No. 004, NYSCEF Doc. Nos.75, 83-92). The Banks's application is denied and defendant's application to dismiss is granted.

DECISION

Defendant asserts two legal theories for dismissal. The first is that the Bank has failed to include a necessary party, Karl Allison, one of Cheryl Allison's thirteen heirs (a grandchild of a recently deceased child). The second is that after commencing this action, the Bank contracted with defendant to modify Cheryl Allison's mortgage by agreement dated October 11, 2024 (See NYSCEF Doc. No. 78 page 2-3).

Necessary Party

Defendant first moves to dismiss the foreclosure complaint under CPLR 3211(a)(10) for failure to name a necessary party, to wit, Karl Allison, one of the deceased mortgagor's grandchildren. But, even if Karl Allison were a necessary party, he is not an indispensable party whose absence mandates dismissal of the complaint (See CPLR 1001(b)). The absence of a necessary party in a mortgage foreclosure action simply leaves that party's rights unaffected by the judgment of foreclosure and sale. Glass v Estate of Gold, 48 AD3d 746, 747 (2d Dept. 2008). Dismissal of an action for nonjoinder of a necessary party " 'is only a last resort' " Saratoga County Chamber of Commerce, Inc. v. Pataki, 100 NY2d 801, 821, quoting Siegel, New York Practice § 133 [3d ed 1999]. Here, Karl Allison is not an indispensable party in the sense that the action cannot fairly proceeding without him. NC Venture I, LP v Complete Analysis, Inc., 22 AD3d 540, 543 (2d Dept. 2005).

The Loan Modification Agreement

Prior to agreeing to the permanent loan modification, the Bank required defendant to successfully complete a three-month trial plan. After making three monthly payments (August, September and October) the Bank advised defendant Allison via correspondence dated October 11, 2024 that he was approved for a permanent loan modification (See NYSCEF Doc. No. 78, Exhibit B). Page 1 of said letter provides as follows:

"What you need to do:

1. To accept the loan modification, you must do the following:

a. Sign the modification agreement and

b. Return it to us in the enclosed prepaid envelope by 11/14/2024."

Of particular importance is the language of the formal loan modification agreement (Pages 2 and 3 of NYSCEF Doc. No. 78, Exhibit C) that the Bank, through its servicer, "have agreed to modify the terms of the underlying mortgage loan agreement" and that the October 11, 2024 agreement was effective as of October 1, 2024. Emphasis added. Additionally, paragraph 1 of the Loan Modification agreement states on page 3 that "Modified Loan Terms: the loan documents will automatically become modified on October 1, 2024 (the "Modification Effective Date") and the "first modified payment will be due on November 1, 2024." Emphasis added. The permanent modification agreement also declares in paragraph 15 "that the Lender's election to accelerate the debt . . . and requirement of immediate payment in full . . . is revoked upon the first payment made under the agreement . . . and the debt evidenced by the Note and Security instrument is deaccelerated pursuant to New York General Obligations law 17-105 . . . "

The Bank argues that the Court cannot modify the express terms of the Note and Mortgage and that it is not obligated to modify mortgages. See NYSCEF Doc. No. 96 ¶13. The Court agrees that is cannot force the Bank to modify the loan. The Court can however compel parties bound by a written contract to perform under that contract or assess damages for a breach.

In its opposition papers, the Bank advises the Court that "the loan modification was ultimately denied for Defendant's failure to return the loan assumption agreement." [NYSCEF Doc. No. 96 at ¶16.] Indeed, the Bank sent a letter dated December 5, 2024 [NYSCEF Doc. No. 91] addressed to the decedent with the salutation to the "accountholder(s)" advising that the "account is no longer eligible for the offer that was sent due to the reason listed below . . . [t]he required Assumption Package to complete the modification was not returned to PHH." This argument was also advanced by the Bank's counsel at oral argument. However, no where in the loan modification agreement does the Bank condition the loan modification agreement on signing and returning an Assumption Package. There are only three preconditions to the modification listed in the loan modification agreement; signing and returning an Assumption Package is not one of them.

Under New York law, the creation of a binding, formal, enforceable contract requires the following: An unconditional offer, acceptance of the offer, consideration, and mutual intent to be bound which includes all essential terms. See generally, Kolchins v Evolution Markets Inc. 31 NY3d 100 (2018). 22 NY Jur. 2d Contracts sec. 9.

In the case at hand, it is undisputable that the Loan Modification Agreement and accompanying correspondence were a formal offer which contained all the essential terms. Defendant Allison paid consideration in the form of three (3) $3,328 separate payments prior to and in conjunction with the offer. The offer was accepted via formal document execution as well as e-mail and telephonic communications on several occasions. Once accepted, the Bank's offer could not be unilaterally revoked based upon the failure to sign and return a package that was not a precondition to the modification agreement; the modification agreement was therefore enforceable. See generally Kolchuk v Stroup, 61 AD3d 118 (1st Dept. 2009).

Moreover, the Loan Modification Agreement provided that — effective October 1, 2024 - the parties agreed to deaccelerate the demand for payment in full and to accept monthly payments as modified. The Bank's remedy under the modification agreement is to treat the [*3]December 12, 2024 late payment as a default, if it so chooses. That remedy can not be addressed in this action as the default herein was based on a 2022 default under the note and mortgage. Accordingly, the above-captioned complaint is dismissed.

Dated: October 17, 2025
HON. C. STEPHEN HACKELING, J.S.C.