# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

957

CAF 09-01654

PRESENT: SCUDDER, P.J., PERADOTTO, CARNI, GORSKI, AND MARTOCHE, JJ.

---

IN THE MATTER OF STANLEY S. GRYBOSKY,
PETITIONER-RESPONDENT,

V                                              MEMORANDUM AND ORDER

DAWN M. RIORDAN, RESPONDENT-APPELLANT.

---

ELIZABETH CIAMBRONE, BUFFALO, FOR RESPONDENT-APPELLANT.

MARY G. CARNEY, BUFFALO, FOR PETITIONER-RESPONDENT.

JEFFREY C. MANNILLO, ATTORNEY FOR THE CHILD, BUFFALO, FOR ABIGAIL G.

-------------------------------------------------------------------------------

Appeal from an order of the Family Court, Erie County (E. Jeannette Ogden, A.J.), entered July 28, 2009 in a proceeding pursuant to Family Court Act article 6. The order, inter alia, granted sole custody of the parties' child to petitioner.

It is hereby ORDERED that the order so appealed from is unanimously affirmed without costs.

Memorandum: Petitioner father commenced this proceeding seeking, inter alia, to modify the prior consent order awarding sole custody to respondent mother by awarding him sole custody of the parties' child, with visitation with the mother. Family Court granted the petition, and we affirm. Contrary to the mother's contention, we conclude that the father met his burden of establishing a change in circumstances sufficient to warrant an inquiry into whether custody should be modified (*see Matter of Maher v Maher*, 1 AD3d 987, 988). A single incident of misconduct or neglect, if sufficiently serious, may establish a change in circumstances warranting a review of an existing custody arrangement (*see e.g. Matter of Bell v Raymond*, 67 AD3d 1410; *Matter of Samuel v Samuel*, 64 AD3d 920, 921). Here, the father's modification petition was prompted by an incident in which the mother left their child, who was then six years old, alone in a casino hotel room for nearly three hours while the mother gambled in the casino. A hotel patron found the child crying in the hallway and alerted casino security, which then called the police. As a result of the incident, the child missed her first day of first grade, the mother was arrested for endangering the welfare of a child, and Child Protective Services (CPS) issued an indicated report for inadequate guardianship and lack of supervision. In addition, evidence was presented that, after the casino incident, the mother and the child stayed over at the home of a man not known by the child. The mother and the man went out for

drinks, leaving the child in the care of the man's daughters.  In addition, the father, the stepmother, and a social worker testified that the child exhibited poor hygiene when in the care of her mother, including wearing unclean clothes and exuding an unpleasant odor.  In addition, during the time in which the mother had sole custody of the child, the child's teeth decayed to the point that she required 11 extractions and the placement of stainless steel crowns.  We thus conclude that the casino incident, coupled with the other instances of inappropriate and neglectful behavior on the part of the mother, established the requisite change in circumstances (*see Maher*, 1 AD3d at 988).

We further conclude that, contrary to the contention of the mother, there is a sound and substantial basis in the record for the court's determination that an award of sole custody to the father is in the best interests of the child (*see Matter of Deborah E.C. v Shawn K.*, 63 AD3d 1724, 1725, *lv denied* 13 NY3d 710; *Matter of Jeremy J.A. v Carley A.*, 48 AD3d 1035).  Here, there is ample support in the record for the court's conclusion that, as between the two parents, the father is better able to provide for the child's financial, educational and emotional needs.  The record reflects that the mother has five children, including the subject child.  The mother testified that she is unemployed and that her only income comes from Supplemental Security Income benefits, child support from the father and an ex-husband, and food stamps.  Nonetheless, the mother acknowledged that she frequents a casino "about once a month," and she testified that she accumulated sufficient "slot dollars" to earn a free hotel room approximately eight times in the last five years.  Although the mother sporadically attends Gamblers Anonymous, she did not seek individual counseling to address her admitted gambling addiction.  The record further reflects that the mother failed to attend conferences at the child's school or a co-parenting class, as ordered by the court.

By contrast, the evidence presented at the hearing established that both the father and the stepmother are steadily employed, have no criminal record, are not the subjects of any CPS indicated reports, and completed a recommended co-parenting course.  The social worker testified that, when the father and stepmother prepared the child for counseling sessions, she was appropriately dressed and groomed.  Also according to the testimony of the social worker, the child is "[e]xtremely" close to the stepmother, and the stepmother testified that she attends parent-teacher conferences, lunches, and open houses at the child's school.  We thus see no basis to disturb the determination of the court with respect to modification of the existing custody arrangement (*see generally Matter of Garland v Goodwin*, 13 AD3d 1059, 1059-1060).

Finally, the mother waived her contention that the court erred in failing to mention in its decision an alleged CPS indicated report concerning the father issued after the close of proof but prior to issuance of the court's decision.  The record reflects that the court advised the mother that, if she wanted the CPS report included in the record and considered by the court, the mother had to obtain a

stipulation to that effect or, alternatively, seek court intervention before a specified date.  There is no indication, however, that the mother prepared a written stipulation to include the CPS report in the record or that she requested a hearing on the ground that the father or the Attorney for the Child refused to so stipulate.  The mother thus waived any contention that the CPS report should have been included in the record or considered by the court in rendering its custody determination (*see generally Matter of Iocovozzi v Herkimer County Bd. of Elections*, 76 AD3d 797, 798; *Reed v Fraser*, 52 AD3d 1323, 1324, *lv denied* 11 NY3d 714; *Matter of Dauria v Dauria*, 286 AD2d 879, 879-880).

In any event, there is no merit to the mother's contention.  Initially, we note that it is unclear from the record whether such an indicated report exists, as the mother claims.  Even assuming, arguendo, that there is such an indicated report, we further note that, although the report was not offered in evidence and no testimony was offered with respect to it inasmuch as it was allegedly issued after the close of proof, the mother did not seek to reopen the hearing to address the report.  Thus, any such report was outside the record before the court, and the court properly declined to consider it in making its custody determination (*cf. Matter of Zwack v Kosier*, 61 AD3d 1020, 1022-1023, *lv denied* 13 NY3d 702; *Klembczyk v DiNardo*, 265 AD2d 934).

Entered:  September 30, 2011                              Patricia L. Morgan
                                                         Clerk of the Court