J.G. v L.G. (2024 NY Slip Op 50659(U))

[*1]

J.G. v L.G.

2024 NY Slip Op 50659(U)

Decided on June 3, 2024

Supreme Court, Westchester County

Hyer, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 3, 2024
Supreme Court, Westchester County

J.G., Plaintiff,

against
L.G., Defendant.

Index No. [Redacted]

Counsel appearing on the matter: 
Counsel for the father/plaintiff, J.G.
John Guttridge, Esq.
Guttridge & Cambareri, P.C.
222 Bloomingdale Road, Suite 301
White Plains, NY 10605
Counsel for the mother/defendant, L.G.
Kathleen Donelli, Esq.
Goldschmidt & Genovese LLP
81 Main Street, Suite 405
White Plains, NY 10601
Attorney for the children
Kathleen Hannon, Esq.
Kathleen M. Hannon, Esq. 
6 Standish Drive
Scarsdale, NY 10583

James L. Hyer, J.

The following documents, numbered 1 to 37, were considered in connection with Defendant's Order to Show Cause, filed May 2, 2024, (hereinafter "Motion Sequence #6"), seeking the entry of an order:
1. Directing Plaintiff to promptly renew and to provide to Defendant proof of insurance that expired on May 1, 2024 for the 2019 Jeep Grand Cherokee (hereinafter "2019 Jeep") [*2]titled in Plaintiff's name but that Defendant drives;
2. Granting Defendant exclusive use and possession of the 2019 Jeep;
3. Appointing a Parent Coordinator (hereinafter "PC") to assist the parties in coparenting the parties' two (2) unemancipated children, and directing that the PC's costs shall be borne 100% by Plaintiff;
4. Directing that The Landmark Appraisal Group, Inc., update its court-ordered Neutral Appraisal Report dated April 28, 2023 for the parties' Marital Residence located at [Redacted] within four (4) weeks of the commencement date of the trial of this action; and for
5. Such other, further and different relief as the Court deems just and proper; and
In connection with Plaintiff's Order to Show Cause, dated May 3, 2024, (hereinafter "Motion Sequence #7"), seeking the entry of an Order:
1. Directing that the settlement agreement effectuated via email between counsel regarding the marital home on November 14, 2023 be enforced;
2. For such other, further or different relief as to this Court may seem just, proper and equitable.
PAPERS NUMBERED
Motion Sequence #6:
Order to Show Cause/Affirmation/Memorandum of Law/Exhibits A-G/ 1-10
Attorney for the Children Affirmation/ 11
Affidavit in Opposition/Affirmation in Opposition/Exhibits 1-10 12-23
Motion Sequence #7:
Order to Show Cause/Affirmation in Support/Memorandum of Law/Exhibits 1-7 24-33
Affirmation in Opposition/Memorandum of Law/Exhibits A-B 34-37
RELEVANT FACTUAL AND PROCEDURAL
HISTORY
This matrimonial action was commenced on November 22, 2022, with the Plaintiff's filing of a Summons and Complaint (NYSCEF Doc. No. 1). A Request for Judicial Intervention was filed on December 22, 2022 (NYSCEF Doc. No. 4). Defendant appeared by her then retained counsel filing a Notice of Appearance on January 19, 2023 (NYSCEF Doc. No. 23). On January 23, 2023, an Order was entered appointing Kathleen M. Hannon, Esq., as attorney for the parties' minor children A.M.G. (DOB: XX/XX/09); and A.L.G. (DOB: XX/XX/12) (hereinafter collectively the "Children") (NYSCEF Doc. No. 31). On February 13, 2023, Defendant filed an Answer with Counterclaims (NYSCEF Doc. No. 58). On February 16, 2023, Plaintiff filed a Reply to Counterclaims (NYSCEF Doc. No. 64).
On March 21, 2023, a Preliminary Conference Order was entered wherein the parties agreed to proceed with respect to the grounds for the dissolution of their marriage in that Plaintiff would receive the entry of a Judgement of Divorce pursuant to New York State Domestic Relations Law § 170(7) with Defendant withdrawing any counterclaims (NYSCEF Doc. No. 70). On April 3, 2023, the Court entered an Order Appointing Neutral Real Property Appraiser appointing Landmark Appraisal Group, Inc., to conduct an appraisal with a valuation date of April 3, 2023, for the real property known as [Redacted] (hereinafter the "Marital Domicile"), to be paid entirely by Plaintiff subject to reallocation at trial (NYSCEF Doc. No. 79).
Following the withdrawal of Defendant's retained counsel, Defendant sought permission to proceed as a poor person and for the assignment of counsel which was granted by Decision and Order appointing Delores Gebhardt, Esq., dated June 9, 2023 (NYSCEF Doc. No. 132). On June 16, 2023, an Amended Decision and Order was entered discharging Delores Gebhardt, Esq., as assigned counsel for Defendant an appointing Kathleen Donelli, Esq. (NYSCEF Doc. No. 133).
On July 21, 2023, the parties entered into a Parenting Agreement which was presented to the Court and so ordered on July 25, 2023 (hereinafter the "Parenting Agreement") (NYSCEF Doc. No. 147). The Parenting Agreement provided, in part, the following provisions pertaining to physical custody including a detailed parental access schedule:
"1. The Mother and Father shall have joint legal custody of the minor Children, as defined by the provisions regarding decision-making set forth in this Agreement, and the Father shall have residential/physical custody of the minor Children, subject to the Mother's Parenting access schedule with the Children as set forth herein. All communications between the parties for matters involving the Subject Child/Children only shall be by our Family Wizard, except in the event of an emergency regarding the Subject Child/Children in which event phone calls shall be permitted.
* * *
6. Regular Parenting Schedule:
a) Commencing upon the signing of this Agreement, the Mother shall have parenting time with the Children on alternate Sundays from 7:00 p.m. to 8:30 p.m. for dinner at a restaurant chosen by the Mother, within 5 miles of the Children's residence. The Mother shall notify the Father by email of the name and address of the restaurant by 5:00 p.m. on the Wednesday prior to the dinner visit. If the Mother fails to notify the Father of the name and address of the restaurant she has chosen by 5:00 p.m. on the Wednesday prior to the dinner visit, the visit shall occur at [Redacted] in [Redacted].
b) The Parents agree that the Mother and the Children shall continue to work with a reunification therapist, currently [Redacted], with a goal of expanding the Mother's access with the Children. The Parents agree to cooperate with [Redacted] and to consider the recommendations of [Redacted] in working toward an expanded access schedule for the Children with their Mother. Any such additional access shall be as agreed between the Parents and confirmed in writing by email before expanded access commences or by Court Order. Unless mutually agreed otherwise, or recommended otherwise by [Redacted], the Parents agree that the Mother and the Children will meet with [Redacted] or another therapist at least once every other week. In the event that [Redacted] is no longer available to work with the family, the Parents shall request from [Redacted] a list of therapists she would recommend to succeed her, and the Parents shall agree on a new reunification therapist.
c) The Children shall remain in individual therapy with [Redacted], and the Parents authorize communication between [Redacted] and [Redacted], and the Parents further authorize communication between their own individual therapist and either [Redacted] or [Redacted], as requested by them.
7. Vacations:
The Parents agree to work with [Redacted] or another reunification therapist with the goal of agreeing on vacation access for the Children with their Mother. Despite the [*3]access set forth above, it is anticipated that the Father will have vacation time with the subject Children, as will the Mother, subject to the Mother's obtaining a more regular access schedule. Neither party shall travel outside the United States with the subject Children absent a written consent of the other party or Court Order.
8. Holidays:
The Parents agree to work with [Redacted] or another reunification therapist with the goal of agreeing to a holiday access schedule for the Children with their Mother, including access on birthdays, Thanksgiving, Christmas or Christmas Eve, Mother's Day, Easter, and 4th of July.
9. Changes to the Schedule:
In the event that either Parent needs to cancel any of the Mother's Regular parenting time with the Children, he or she shall provide the other Parent with 48 hours advance written notice by email if practicable. The Parents shall use their best efforts to reschedule the Mother's missed time from her Regular Parenting Schedule."
The Parenting Agreement further sets forth in detail the manner within with Defendant, as the non-custodial parent, would have routine communication with the Children in addition to the access schedule set forth above:
10. Communication:
a) The Mother shall have a phone call, Facetime, Zoom or other communication with the Children every Wednesday evening between 7:00 p.m. and 9:00 p.m. It is the responsibility of the Mother to place the call. If the Mother or the Children are not available on any given Wednesday, prior to the time of the call, an alternate time for a call that week shall by confirmed by the Father and the Mother. If there is no such rescheduling, and if the Mother does not place a call between 7:00 p.m. and 9:00 p.m. on any given Wednesday, she has forfeited the call for that week. The Father shall make the Children available each Wednesday between 7:00 p.m. and 9:00 p.m., unless rescheduled, at each of the Children's cell phone numbers for the call from their Mother. Phone and Facetime/Zoom access may be expanded as per the recommendations of [Redacted], and confirmed in writing by email."
With respect to decision-making, the Parenting Agreement clearly set forth the manner within which the parties would engage in routine and major decision-making pertaining to the Children, and further delineated the manner within which the parties would specifically address healthcare decisions, educational decisions, the religion of the Children, the extracurricular activities of the Children, summer camp and programs of the Children, and the manner within which childcare of the Children would be conducted. This very detailed agreement employed the use of a variation of what is commonly referred to as the "professional model" wherein if a disagreement as to a particular major decision existed between the parties, a professional in that area (i.e., medical professional, educator, etc.) would be called upon to provide a recommendation after which Plaintiff would have final decision-making to the extent a disagreement continued to exist with a delay in implementation of Plaintiff's decision to permit Defendant ample opportunity to seek Court intervention. The language of the Parenting Agreement pertaining to decision-making includes the following:
"2. Routine Decisions:
"The Parent with whom the Children are residing on that day (as hereinafter set forth) [*4]shall make routine decisions on day-to-day issues, subject to the provisions of this Agreement.
3. Major Decisions:
a) As to all major, non-emergency decisions ("Major Decisions") concerning either of the Children, the Mother and the Father shall, in advance and in good faith, consult with one another as set forth herein and the Parents shall seek mutual agreement on all Major Decisions affecting the Children, with a view toward arriving at a harmonious policy calculated to promote the Children's best interest. "Major Decisions" shall include all non day-to-day routine decisions, including but not limited to (a) "HEALTHCARE" (Physical and Mental); (b) "EDUCATION"; (c) "EXTRACURRICULAR ACTIVITIES"- selection of extracurricular activities, summer camp or similar organized summer activity; (d) "RELIGION"
b) Joint-Consultation. Consultation shall be initiated by message on Our Family Wizard to the other Parent about the Major Decision. The subject of the said email shall be clearly labeled "Major Decision" and shall not be part of any other email chain nor shall the email contain discussion about any subject other than the Major Decision(s). The Parent initiating discussion about a Major Decision shall set forth the issue, and his/her position, as well as any information or recommendation that Parent has received from a professional involved in that Child's education, healthcare, religious issue, extracurricular activity, or other Major Decision. The Responding Parent shall have seventy-two (72) hours (unless the subject matter of the issue requires sooner action, notice of which shall be included in the initiating message) from the receipt of the notice by Our Family Wizard message to respond. The Response shall specify the Responding Parent's position including whether he/she seeks an opinion from a Relevant Professional or other consultant and/or is gathering information with respect to the Major Decision and a brief statement of his/her position. If no response is received after 72 hours of the initiating message, the Parent who has initiated the discussion shall have the authority to make the decision and shall notify the other Parent immediately in writing by Our Family Wizard message.
The Father's email address is [REDACTED]. The Mother's email address is [REDACTED]. The Parents shall notify one another by Our Family Wizard message of any change in email address within twenty-four (24) hours of the change. If a Parent will be without email for seventy-two (72) or more hours, he/she shall advise the other Parent. In such event, the Parents shall agree on alternative arrangements for communications, i.e., telephone calls, texts, etc. for the making of Major Decision(s) during the period a Parent has no email access.
If the response indicates that the Mother and the Father do not agree on the issue, within the next one-week period, both Parents shall choose by agreement and consult an expert/professional, who is involved with the subject Child in the area of the Major Decision; for example on a proposed medical Major Decision, the pediatrician or medical or dental specialist, and for a proposed educational Major Decision, the Child's teacher, principal, special education provider, guidance counselor or Education Specialist, if any, shall be consulted. The Parents shall request a recommendation from the expert/professional. If any expert/professional requires longer than the one-week period for consultation, to render a written recommendation or provide information, the Parents [*5]shall allow such time as the Professional needs to render an opinion in writing, so long as none of the options proposed by either Parent are foreclosed by the delay.
Upon receipt of the written recommendation of the Professional, each Parent shall review and consider the recommendation of the Professional. If the Parents still do not agree, the Father shall have the authority to make the final decision and shall notify the Mother within 24 hours in writing by email of the decision. Any final decision shall not be implemented for five (5) business after notification of the decision, unless circumstances dictate that the decision must be implemented immediately.
Notwithstanding anything contained herein, each Parent retains his/her right to bring any issue with respect to the determination of a Major Decision before a court of competent jurisdiction, and to request a stay of the implementation of any decision.
c) Healthcare Decisions:
Healthcare decisions are defined as including, but not limited to, medical (i.e., nonemergency care, change or addition of physicians, treatment plan/protocols, medication, protocol, vaccinations, etc.), dental (i.e., change in dentist, orthodontia, oral surgery, prosthetics, etc.), treatment by audiologists, speech pathologists, mental health professionals, occupational or physical therapists, and mental healthcare (selection of professional, medication, treatment plan, etc.) It is agreed that the Children's present healthcare providers are as follows, and a change in or addition to any of the service providers shall be considered a Major Decision:
• Pediatrician: [Redacted]
• Dentist: [Redacted]
• Other medical specialist: [Redacted]
• Therapist: [Redacted]
• Reunification therapist: [Redacted]
d) Educational Decisions:
It is agreed that the Children shall continue to attend school in the [Redacted] Public School system for so long as either Parent resides within the district. If neither Parent resides within the [Redacted] School district, the Children shall attend school in the public school district where the Father resides. Choice of a private school shall be deemed a Major Decision. Other educational Major Decisions include, but are not limited to educational accommodations, implementation of special education committee recommendations, the employment of tutors, academic performance programs or test preparation programs, education committee recommendations, college selection, choice of academic classes, change in school program or study abroad.
e) Religion:
It is agreed that the Children shall continue to be raised in the Roman Catholic religion and the Children may attend religious services with either Parent. The Children shall continue to participate in any religious education program in which they are currently enrolled. Enrollment of either Child in a new religious education program shall be deemed a Major Decision. The Professional for an issue regarding religion shall be a Priest assigned to the Parish Church which the Children most often attend.
f) Extracurricular Activities:
The Children shall continue to participate in the sports and other extracurricular programs in which they are currently enrolled. Any change in said programs, or any [*6]additions to the extracurricular schedule of either of the Children shall be considered a Major Decision. With regard to the choice of sports, teams, and other extracurricular activities, each Child's wishes, interests, and aptitudes shall be considered in the process of making the final decision, and the impact of the decision on each Parent and his/her time with each of the Children shall also be considered in the process of making the final decision. Each Parent is responsible for providing transportation for the Children to any of their agreed-upon activities or social engagements (provided the scheduled Parent agreed thereto) during their respective custodial times, and providing necessary and appropriate gifts, as applicable, for social engagements falling during his/her Parenting Time. If the Parents are unable to agree on extracurricular activities for the academic, the Father shall have authority to choose the activities for both Children.
g) Summer Camp/Programs:
With respect to the selection of organized summer programs and camp, the consultation between the Parents shall take place within a sufficient time so as to enable them to arrive at a final decision by March 31st of each year and shall take into consideration the financial circumstances of the Parents. With regard to the choice of Summer Camp, each Child's wishes and historical practice shall be considered in the process of making the final decision. If the Parents are unable to agree on a Summer Camp, the Professional to be consulted shall be the Child's guidance counselor at school.
h) Childcare:
If either Parent employs a childcare provider on a regular basis, that provider shall be introduced to the other Parent, contact information shall be provided, and communication between the childcare provider and the other Parent reasonably necessary to implement the terms hereof and coordinate a Child's activities and care shall be permitted."
The terms of the Parenting Agreement, both within the preamble recitals and in the substantive provisions, manifest the parties' clear and unambiguous intent for the documents to set forth a final resolution of all custody and access issues before this Court pertaining to the Children:
"WHEREAS, the Parents desire, by this Agreement, to settle all issues relating to custody and parental access of their Children; and
WHEREAS, the Parents acknowledge and agree that this Agreement constitutes the entire understanding between them and they agree that the following provisions will constitute a full and final resolution of all their respective claims with regard to custody, parental access and decision-making, and that this Parenting Agreement shall be So Ordered by the Supreme Court and shall be incorporated by reference in any Judgment of Divorce that may be entered herein, and which shall survive and shall not be merged in any Judgment of Divorce that may be entered; and
* * *
WHEREAS, the Parents desire to settle any issues related to custody, parental access and decision-making regarding the Children within the context of the Pending Action rather than proceed to trial on said issues; and
* * *
15. This Parenting Agreement shall be governed by and interpreted pursuant to the internal laws of the State of New York. The Parents agree that New York State is the [*7]Child's habitual residence pursuant to DRL Article 5-A. The Parents hereby consent and accept the jurisdiction of the courts of the State of New York for the resolution of any dispute between them pertaining to custody of the Children or the right of the other Parent to have access to the Children. If any such dispute cannot be resolved by negotiations between the Parents, the Parent seeking such change in the custodial or access rights shall have the right to apply to a court of appropriate jurisdiction in the State of New York for an order or judgment directing any such change. The determination of the court of appropriate jurisdiction in the State of New York as to any such dispute shall be conclusive and binding upon the Parents until modify by any subsequent order of judgment or by appellate review. New York shall be deemed the Home State for determination of all issues regarding the Child.
16. This Parenting Agreement shall be so ordered by the Court, and shall be incorporated by reference into, but not merged with, any decree or judgment issued by any Court of competent jurisdiction.
17. The signatures below indicate that the undersigned have read and understand, and agree to, the terms of this Parenting Agreement."
On July 26, 2023, a Notice of Entry of the Parenting Agreement was filed (NYSCEF Doc. No. 150). To date, no Appeals or Motions have been filed seeking to vacate or modify the Parenting Agreement with the exception of the request for the appointment of a Parent Coordinator sought within Motion Sequence #6. Moreover, no Agreements or Stipulations executed by the parties amending the Parenting Agreement have been submitted to the Court.
On April 16, 2024, a Conference was held with the Court wherein both parties through counsel raised issues seeking Court intervention resulting in the Court granting leave for the parties to engage in motion practice which was further set forth by Court Order dated April 18, 2024 (NYSCEF Doc. No. 399). Thereafter, Motion Sequences #6 and #7 were filed inclusive of the submissions noted above.
Turning first to Motion Sequence #6, on the return date of May 23, 2024, all parties and counsel appeared before the Court for a Conference wherein Plaintiff's counsel agreed to the relief sought by Defendant in prongs 1 and 2 of Motion Sequence # 6, leaving the only substantive prongs remaining to be determined by this Court being prongs 3 and 4. With respect to Plaintiff's request for the appointment of a Parent Coordinator and that Plaintiff be required to pay the entire cost, Defendant's counsel asserts in her Affirmation (NYSCEF Doc. No. 401):
"4. With regard to the appointment of a Parent Coordinator, the parties' reunification therapist, [Redacted], strongly recommended the parties have professional support to improve their communication and co-parenting * * *
6. On April 1, 2024, Ms. Hannon forwarded an email message from [Redacted] dated March 28, 2024 in which [Redacted] set forth her recommendations. In item number 5 of her email message, [Redacted] identified the "high conflict that continues between the parents" and stated that "it is highly recommended that a professional remains involved as the parents will need continued intervention including parenting support, dispute resolution and mediation. I recommend a trained Parent Coordinator to assist with this." A copy of Ms. Hannon's April 1, 2024 email forwarding [Redacted]'s March 28, 2024 email is attached as Exhibit E.
7. By email dated April 12, 2024, I explained to the AFC that Defendant did not agree that her proposed temporary parenting schedule was "in her daughters' best interest because she would only be with them on alternate Sundays from 2pm until 8pm." My April 12, 2024 e-mail to the AFC and her April 11, 2024 email message to me with the AFC's proposed temporary parenting schedule are attached as Exhibit F.
8. Although Defendant initially said that she would not insist on a Parent Coordinator, Defendant now asks that a Parent Coordinator be appointed because the parties have not been able to agree on a temporary parenting schedule.
9. For this reason, it is respectfully requested that the Court appoint a Parent Coordinator to assist the parties in improving their communication and co-parenting skills. It is also respectfully submitted that, as Plaintiff is the (much) higher-earning party, the costs of such Parent Coordinator should be borne 100% by Plaintiff. As stated in the parties' 2023 W-2s which are attached as Exhibit G, Plaintiff's 2023 gross income was $648,380.25 and Defendant's 2023 gross income was $29,336.42."
The attorney for the Children submitted an Affirmation in Opposition (NYSCEF Doc. No. 424) to Motion Sequence #6, strongly opposing the appointment of a Parent Coordinator, due to her clients' position against such action, as well as her belief that a clear decision-making process is set forth in the Parenting Agreement, thereby negating the need for a Parent Coordinator:
"4. Both A.M.G., who is now 14 years old, and A.L.G., who will be 12 in June, feel very strongly that they do not want a Parent Coordinator. They do not want any third party involved in the scheduling of their access with their Mother, or with respect to "co-parenting". They do not want to meet with a Parent Coordinator. The girls believe that their Mother is looking for another forum to air all of her complaints against them and their Father, and force them to do things they do not want to do. The girls believe that reunification therapy with their Mother failed because the therapist listened to all of their Mother's complaints about them and their Dad, and sided only with Mom and disrespected Dad. By agreement and consent of [Redacted], the reunification sessions were terminated. Neither A.M.G. or A.L.G. want anything to do with a Parent Coordinator, as a substitute for the failed reunification therapy.
* * *
7. With respect to decisions, I do not believe a parent coordinator is necessary. The So Ordered Stipulation of Settlement dated July 25, 2023 has a clear decision making process set forth and I unaware of any situation when the Parents could not agree on a decision involving the Children."
Plaintiff asserts in his Affidavit (NYSCEF Doc. No. 429 ¶¶ 7, 8) that he opposes the appointment of a Parent Coordinator due to the parties having entered the Parenting Agreement and that, "As Defendant has failed to spend time alone with the children even when given the opportunity, and has failed to attempt to repair the relationship, adding yet another professional, a Parent Coordinator, to this already complex and sensitive situation will only cause the children more unnecessary anxiety and stress and it will do very little to positively impact the environment."
Defendant further asserts that an updated appraisal should be directed to be prepared by the Court appointed neutral appraiser. Plaintiff's counsel opposes this relief for reasons directly [*8]related to Plaintiff's relief sought in Motion Sequence #7 wherein Plaintiff seeks an Order to be entered directing that the purported settlement agreement effectuated via e-mail between counsel regarding the Marital Domicile on November 14, 2023 be enforced (hereinafter "Counsel E-Mails").
Annexed as Exhibit 4 to Motion Sequence #7, are the Counsel E-Mails which are undisputed as having been exchanged between the parties' counsel which read as follows:
Sent: Wednesday, November 8, 2023 12:46 PM
Subject: [Redacted]: Without Prejudice; Not to be Used in Litigation
Dear John,
[Redacted] will agree to the proposed settlement on the marital residence based on a $640,000 value, subject to written confirmation that the balance of the mortgage as of the date of commencement was $198,365. We also agree that [Redacted] & [Redacted] will be equally responsible for paying transfer taxes. Except for the balance of the mortgage as of the date of commencement & [Redacted] 50% share of the transfer taxes, no other expenses would be deducted from the money that [Redacted] will pay [Redacted] for her interest in the marital residence. In addition, [Redacted] will remove [Redacted]'s name from the mortgage within 120 days from the date of the Stipulation on the marital residence. Except for the foregoing terms, none of the additional issues between our clients will be resolved by this Stipulation, including the contents of the marital residence and [Redacted]'s valuables and other personal property.
Kathleen Donelli, Esq.
Partner
Goldschmidt & Genovese, LLP
81 Main Street, Suite 405
White Plains, NY 10601
Phone: [Redacted]
Fax: [Redacted]
655 Third Avenue, 11th Floor
New York, New York 10017
Phone: [Redacted]"
* * *
"Re: [Redacted]: Without Prejudice; Not to be Used in Litigation
Tue 11/14/2023 9:37 AM
Good Morning,
We are in receipt of your email below and we will agree to this.
Best,
Sabrina Sayegh
Guttridge & Cambareri, P.C.
Paralegal
222 Bloomingdale Road, Suite 301
White Plains, NY 10605
[Redacted]
[Redacted]"
Plaintiff's counsel asserts in his Affirmation submitted in support of Motion Sequence #7 that the subject e-mail of Defendant's counsel was sent to him in response to a settlement offer of Plaintiff presented to Defendant's counsel just days prior to the e-mail of Defendant's counsel which comported with the offer he presented wherein Defendant's counsel accepted the offer after which he again confirmed Plaintiff's agreement to the settlement terms:
"8. Shortly after the October 30, 2023 Conference, on November 8, 2023, Ms. Donelli sent me an email confirming that her client was in agreement with our offer which was in lockstep with our off the record conversations related to the value. This email is annexed hereto as Exhibit 4. The email also stated how the transfer taxes would be split between the parties and how long the Plaintiff would have to remove the Defendant's name off the mortgage after execution of a stipulation. I reviewed Ms. Donelli's email and my office responded on November 14, 2023, in agreement with the terms as laid out by Ms. Donelli (Exhibit 4)" (NYSCEF Doc. No. 411, ¶ 8).
Defendant's counsel asserts that no binding agreement exists as the Counsel E-Mails both include "Without Prejudice: Not to be Used in Litigation"; there was no open court agreement and no signed agreement or Court Order; that the agreement was subject to written confirmation; and all material terms were not set forth.
FINDINGS OF FACT AND CONCLUSIONS OF LAW
A. Request For Appointment of Parent Coordinator
A stipulation entered into by parties to a matrimonial action constitutes a contract subject to the principals of contract interpretation and where the stipulation is clear and unambiguous on its face, the intent of the parties must be gleaned from the four corners of the agreement, and not from extrinsic evidence (Castro v. Kaiminski, 197 AD3d 609 [2d Dept 2021]).
"Modification of a court-approved stipulation setting forth the terms of custody or parental access is permissible only upon a showing that there has been a sufficient change in circumstances such that modification is necessary to ensure the best interests and welfare of the child" (Baraz v. Polyakov, 198 AD3d 853 [2d Dept 2021]; Sukul v. Sukul, 196 AD3d 661 [2d Dept 2021]). "The paramount concern when making such a determination is the best interests of the child under the totality of the circumstances" (Matter of Cabano v. Petrella, 169 AD3d 901 [2d Dept 2019]). The party seeking to modify an existing custody arrangement bears the burden of proof by a preponderance of the evidence (Sweetser v. Willis, 91 AD3d 963 [2d Dept. 2012]). "While the express wishes of children are not controlling, for purposes of a best-interest analysis in a custody modification proceeding, they are entitled to great weight, particularly where their age and maturity would make their input particularly meaningful" (Gayle v. Muir, 211 AD3d 942 [2d Dept 2022]). The party seeking to modify an existing custody order must demonstrate a change in circumstances that reflects a genuine need for the modification so as to ensure the best interests of the child and, where this threshold is met, court then proceeds to the best interests analysis (Trimble v. Trimble, 125 AD3d 1153 [3d Dept 2015]). Even one act of misconduct or [*9]neglect by a parent, depending upon the severity, may warrant a modification (Grybosky v. Riordan, 87 AD3d 1339 [4th Dept 2011]).
The Court of Appeals has held that in determining whether a child's best interests warrant modification of an existing custody order, a court must consider the advantage to the child of maintaining stability in his or her living situation, "Custody of children should be established on a long-term basis, wherever possible; children should not be shuttled back and forth between divorced parents merely because of changes in marital status, economic circumstances or improvements in moral or psychological adjustment, at least so long as the custodial parent has not been shown to be unfit, or perhaps less fit, to continue as the proper custodian," and, "'The rearing of a child requires greater stability than a roller-coaster treatment of custody,'" (Obey v. Degling, 37 NY2d 768 [1975], quoting, Dintruff v. McGreevy, 34 NY2d 887 [1974]).
A custody determination, including whether or not a change in circumstances has occurred, may be made without a hearing where there are no disputed issues and sufficient facts are shown by uncontroverted affidavits (Odeh v. Assad, 74 AD3d 1345 [2d Dept 2010]). Since the court's determination of whether there has been a change in circumstances depends to a great extent upon its assessment of, among other things, the credibility of the witnesses, the court's determination should not be disturbed unless it lacks a sound and substantial basis in the record (Handakas v. Bardatsos, 215 AD3d 840 [2d Dept 2023]).
A court may properly appoint a parenting coordinator to mediate between parties and oversee the implementation of their court-ordered parenting plan but may not delegate to a parenting coordinator the authority to resolve issues affecting the best interests of the children (Silbowitz v. Siblowitz, 88 AD3d 687 [2d Dept 2011]).
Upon review of the plain language of the so ordered Parenting Agreement, the terms are clear and unambiguous in that the parties did not include any mention of the parties' use of a Parent Coordinator, thereby underscoring their intent not to use a Parent Coordinator. If any question existed as to the intent of the parties with respect to the use of a Parent Coordinator it is extinguished upon review of the Affirmation of Defendant's Counsel who confirmed that her client initially said she would not insist upon a Parenting Coordinator but is now seeking such appointment nearly one year following the parties having entered into the Parenting Agreement (NYSCEF Doc. No. 401, ¶ 8).
Notably, the parties' intent with respect to the methodology of how decision-making pertaining to the Children was articulately set forth for both routine and major decisions. These provisions provided detailed requirements the parties are to engage in when making wat are defined as "Major Decisions," including joint consultation and the manner of communication to effectuate this process. The terms require that the parties communicate with each other through Our Family Wizard; the manner in which the message is to be labeled and the content of such message; the time the receiving parent has to respond; if no agreement is reached the manner within which the parties will consult with a professional to seek a recommendation; and upon the receipt of the professional's recommendation if no agreement is reached permitting Plaintiff to make the decision after a delineated period within which Defendant may seek Court intervention.
The parties' intent with respect to the physical custody of the Children was also clear and unambiguous. Paragraph 1 of the Parenting Agreement notes that, "Father shall have residential/physical custody of the minor Children, subject to the Mother's Parenting access schedule with the Children as set forth herein," and the Defendant's access schedule is set forth [*10]in Paragraphs 6 (routine access), 7 (vacation access), and 8 (holiday access). It was very clear within these provisions that the parties agreed to utilize the assistance of [Redacted] (hereinafter "[Redacted]") to expand upon Defendant's delineated access schedule, but that no recommendations made by [Redacted] would be effectuated unless agreed upon in writing by the parties or pursuant to Court Order.
As the intent of the parties within the four corners of the Parenting Agreement is clear that the use of a Parenting Coordinator was not agreed upon within the terms of the document and a detailed decision-making procedure was set forth, the Court must now determine if a basis for modification is warranted for such an appointment. Upon review of the motions of both parties, a determination will be made based upon these submissions without a hearing as the Court finds that there are no disputed issues relevant to the Court's determination and sufficient facts are shown by uncontroverted documents filed with this Court.
The primary arguments asserted for the appointment of a Parent Coordinator by Defendant is: (1) [Redacted]'s recommendation for such a professional to "assist the parties in improving their communication and co-parenting skills" (NSYCEF Doc. No. 401, ¶ 9); and (2) Defendant's disagreement with respect to her "proposed temporary parenting schedule" (NYSCEF Doc. No. 401, ¶ 7). The Court does not find that Defendant has provided ample support for a finding that a change in circumstances has occurred that reflects a genuine need for the requested modification so as to ensure the best interests of the Children arising out of Defendant's arguments asserted or otherwise. To the contrary, as noted herein the Court finds that the Parenting Agreement clearly sets forth a vehicle for the parties to proceed to address the needs of the parties' family as expressed in the pending motions.
While [Redacted] was agreed upon to provide assistance to the parties with a goal of expanding Defendant's parenting access time, the parties clearly did not provide her with authority to make binding recommendations and specifically noted that her recommendations would not be binding until such time as agreed by the parties in writing or by Court Order. [Redacted]'s recommendation for the parties' use of a Parent Coordinator appears to have been made with the understanding that her role with the parties' family was at an end as she noted in her e-mail, "it is highly recommended that a professional remains involved as the parents will need continued intervention including parenting support, dispute resolution and mediation" (emphasis added) (NYSCEF Doc. No. 401, ¶ 6).
It is clear that the parties are in dispute with respect to the manner within which [Redacted]'s relationship with the family was terminated. Defendant's counsel refers to a March 14, 2024, e-mail wherein she states Plaintiff unilaterally terminated the Children's sessions with Defendant (NYSCEF Doc. No. 401, ¶ 5); Plaintiff states that [Redacted], "is no longer impartial and thus cannot do the job of reunification therapist effectively and in the best interest of the children (NYSCEF Doc. No. 428, ¶ III, 1), and; the attorney for the Children notes, "By agreement and consent of [Redacted], the reunification sessions were terminated" (NYSCEF Doc. No. 424, ¶ 4).
Without touching upon the cause of the termination of [Redacted]'s involvement with the family pursuant to the Parenting Agreement or if her assistance was effective, to the extent that [Redacted] is no longer available to assist the family in her intended role, the Parenting Agreement provides for the manner within which she is to be replaced, "In the event that [Redacted] is no longer available to work with the family, the Parents shall request from [Redacted] a list of therapists she would recommend to succeed her, and the Parents shall agree [*11]on a new reunification therapist" (Parenting Agreement, ¶ 6 b.). Accordingly, as [Redacted] is unable to continue working with the family as intended in the parties Parenting Agreement, the parties should comply with the terms of the Parenting Agreement to seek a therapist as her replacement by requesting a recommended list of therapists from [Redacted], not a Parent Coordinator which was never contemplated as part of the parties' Parenting Agreement.
With respect to Defendant's disagreement with respect to her "proposed temporary parenting schedule and assertion that a Parenting Coordinator appointment is warranted "because the parties have not been able to agree on a temporary parenting schedule" (NYSCEF Doc. No. 401, ¶ 8), this argument is also unpersuasive. The Parenting Agreement clearly and unambiguously set forth Defendant's access schedule and while the parties stated the goal of expanding upon that schedule, they also unmistakably noted that such expansion would not happen absent a written agreement between the parties or a Court Order (Parenting Agreement, ¶ 6 b.). Accordingly, to the extent that Defendant asserts that the parties have been unable to agree upon an expansion of her access schedule, the Parenting Agreement sets forth the need for the parties to obtain from [Redacted] a recommendation for a replacement therapist who may continue the family reunification efforts.
Due to the above, it is determined that the parties' clear and unambiguous intent manifested in the Parenting Agreement was not to utilize a Parent Coordinator, but to instead utilize a therapist to assist in the family reunification process and to the extent the selected therapist [Redacted] was no longer available, that the parties would select a replacement from a list of recommended therapists to be obtained from [Redacted]. Upon review of the submissions made to this Court, Defendant failed to prove the occurrence of a change in circumstances that reflects a genuine need for the modification of the terms set forth in the Parenting Agreement to support the appointment of a Parent Coordinator. To the contrary, the parties are directed to comply with the terms of the Parenting Agreement in seeking a replacement therapist.
Accordingly, Motion Sequence #6 is denied to the extent that the Court declines Defendant's request to appoint a parenting coordinator.
b. Request to Determine Counsel's E-Mail Communications a Binding Agreement
New York State Civil Practice Law and Rules ("CPLR") § 2104, provides, "An agreement between parties or their attorneys relating to any matter in an action, other than one made between counsel in open court, is not binding upon a party unless it is in a writing subscribed by him or his attorney or reduced to the form of an order and entered."
E-Mail exchanges between counsel have been held to constitute a binding settlement agreement and in one decision entered by the Appellate Division First Department, the Court noted:
"A binding settlement agreement existed between plaintiff and defendants when plaintiff's counsel responded, "Confirmed. Thank you" to RB NY Enterprises Inc.'s insurance carrier's email stating, "This email is to confirm we are settled at $85,000" (see Matter of Philadelphia Ins. Indem. Co. v. Kendall, 197 AD3d 75, 80, 151 N.Y.S.3d 392 [1st Dept. 2021]). Plaintiff's counsel had authority to accept the settlement; the confirmation came from counsel's email account; the parties reached an agreement as to the settlement amount; no conditions were attached to the confirmation; the parties prepared the release documents; and plaintiff's counsel forwarded the releases to plaintiff for signature. Contrary to plaintiff's arguments, the emails that followed the confirmation, [*12]discussing medical lien amounts, did not create a condition precedent to vitiate the agreement (see Rawald v. Dormitory Auth. of the State of NY, 199 AD3d 477, 478, 156 N.Y.S.3d 201 [1st Dept. 2021]), and plaintiff's failure to sign the release documents amounted to no more than a ministerial condition precedent to payment under these facts (Philadelphia Ins., 197 AD3d at 81—82, 151 N.Y.S.3d 392)" (Guice v. PPC Residential, LLC, 212 AD3d 577 [1st Dept 2023].
In order for an agreement to be found binding by e-mail exchange, the e-mails must be subscribed within the meaning of the statute, with the sender identifiable either prepopulated or retyped, having sent the e-mail intentionally, containing all of the material terms of the agreement (Rawald v. Dormitory Authority, 199 AD3d 477 [1st Dept 2021]).
With respect to the requirement that an agreement include all material settlement, it has been held furnishing further documentation of a binding agreement or to satisfy a ministerial condition precedent to payment did not constitute a condition precedent to the underlying binding settlement agreement reached by e-mails exchanged between counsel:
"Second, an email settlement must, like all enforceable settlements, set forth all material terms. That condition is satisfied here where the sole issue is how much respondent would accept in settlement of her SUM claim. Respondent argues that the settlement was conditioned on the respondent signing the release. We disagree. The Release and Trust Agreement was to be further documentation of the binding agreement constituted by the parties' counsel's emails agreeing to settle respondent's claim for $400,000 (see Kowalchuk v. Stroup, 61 AD3d 118, 123, 873 N.Y.S.2d 43 [1st Dept. 2009]), rather than something on which that binding agreement was contingent (see Trolman v. Trolman, Glaser & Lichtman, P.C., 114 AD3d 617, 618, 981 N.Y.S.2d 86 [1st Dept. 2014], lv denied 23 NY3d 905, 2014 WL 2580146 [2014]; Shah v. Wilco Sys., Inc., 81 AD3d 454, 916 N.Y.S.2d 82 [1st Dept. 2011], lv dismissed 17 NY3d 901, 933 N.Y.S.2d 650, 957 N.E.2d 1154 [2011]). The material term of the parties' agreement to settle respondent's claim being the sum of money that petitioner would pay respondent, respondent's execution of a general release was essentially a ministerial condition precedent to payment (see CPLR 5003-a[a]; Anghel v. Utica Mut. Ins. Co., 164 AD3d 1294, 1296, 82 N.Y.S.3d 541 [2d Dept. 2018]; compare Teixeira v. Woodhaven Ctr. of Care, 173 AD3d 1108, 103 N.Y.S.3d 120 [2d Dept. 2019] [email exchange that included " 'consider it settled' " did not show mutual accord where settlement was subject to resolution of related proceeding in Surrogate's Court])." (Philadelphia Insurance Indemnity Company v. Kendall, 197 AD3d 75 [1st Dept 2021].
With respect to an e-mail exchange wherein the words "without prejudice" are used, in determining if the e-mails evidence a binding agreement the Courts have turned to the intent and mutual understanding ascertained from the clear language of the communications. In one decision wherein the Court declined to determine that a binding agreement existed in e-mails exchanged between counsel, the Court reasoned:
"This motion highlights a recurrent litigation issue: What is the legal consequence of an exchange of e-mails between litigants? Although e-mails might best be viewed simply as correspondence in a different form, transmitted by a new medium, the prevalent informality and brevity of e-mail style and the speed of transmission frequently without [*13]reflection time can cause ambiguity and uncertainty in the litigation context.
Movant alleges that the attorneys' exchange of e-mails constitutes an enforceable settlement agreement. It does not. The initiatory e-mail contains a summary or outline of a settlement proposal and requests 'Please confirm, without prejudice, that the following is the settlement proposal:' The simple one-line response was 'Confirmed without prejudice.' Thus, at most, the two parties agreed that what was contained in the first e-mail, was the 'proposal.'
There is no language in either e-mail evincing an intent or mutual understanding that the first e-mail was a final settlement offer capable of acceptance or that the first, upon acceptance, would be viewed as a complete, final contract. Indeed, the use of the word 'proposal,' and the request to confirm the proposal, indicated a prudent, lawyerly attempt on both sides to confirm the substance of what was 'on the table' before the final stipulation or agreement could be drafted and exchanged for the customary vetting, revision and execution" (Weldon v 210 E. 73rd Owners Corp., 15 Misc 3d 1125A [Sup. Ct., NY County 2007]).
In the instant matter, e-mail sent by Defendant's counsel is not a proposal, but rather a clear confirmation that Defendant will accept the proposed settlement [clearly initially provided by Plaintiff] setting forth Defendant's agreement to each of the terms set forth in the proposal which are recited by Defendant's counsel including: (1) value of the marital domicile; (2) the parties equal responsibility for payment of transfer taxes; (3) Defendant's distribution being reduced only by the balance of the mortgage as of the date of commencement and Defendant's share of the transfer taxes; (4) removal of Defendant's name from the mortgage within 120 days of the date of the stipulation; and (5) confirming that except for these terms no additional issues are being resolved by "this Stipulation." Notably, while Defendant's counsel now asserts her e-mail does not constitute a binding agreement, her own e-mail refers to the terms she set forth as "this Stipulation." Further, while the terms recited by Defendant's counsel within the Stipulation are "subject to written confirmation" as to the balance of the mortgage as of the date of commencement, such requirement is merely for further documentation of the binding agreement which was formed following the e-mail of Plaintiff's counsel accepting the "Stipulation" presented by Defendant's counsel.
Finally, Defendant's counsel asserts that her e-mail Stipulation and the response from Plaintiff's counsel accepting the Stipulation should not be binding due to the inclusion of the words "Without Prejudice; Not to Be Used in Litigation" within the "Subject" portions. The Court finds this assertion to be both disingenuous and unpersuasive, as it contradicts the clear and unambiguous language set forth within her the e-mail of Defendant's counsel, wherein she refers to the terms she crafted as "this Stipulation."
This language is evidence of the unmistakable intent and mutual understanding of both counsel that through the recital of the terms of the "Stipulation" by Defendant's counsel beginning with "[Redacted] will agree to the proposed settlement on the marital residence" (emphasis added) that Defendant was accepting the proposed settlement offered by Plaintiff by confirming all material terms which were then confirmed as accepted by Plaintiff's counsel who noted "we will agree to this." A clear reading of the language contained in both e-mails reflects a [*14]mutual understanding and intent of both counsel that the e-mail of Defendant's counsel was an acceptance of Plaintiff's final settlement offer capable of confirmation of continued acceptance by Plaintiff's counsel which occurred by way of the e-mail of Plaintiff's counsel. 
Accordingly, the Court determines Motion Sequence #7 is hereby granted to the extent that the Counsel E-Mails constitute a binding agreement as to the marital domicile and the parties are directed to comply with such terms.
ACCORDINGLY, IT IS HEREBY:
ORDERED that Motion Sequence #6 is denied to the extent that the Court declines Defendant's request to appoint a parenting coordinator and directs the parties to comply with the terms set forth within the Parenting Agreement; and it is further
ORDERED that Motion Sequence #7 is hereby granted to the extent that the Counsel E-Mails constitute a binding agreement as to the marital domicile and the parties are directed to comply with such terms; and it is further
ORDERED that by June 7, 2024, Plaintiff's counsel shall serve a copy of this Decision and Order with a Notice of Settlement, and by that date shall file same with proof of service; and it is further
ORDERED that a Status Conference shall be held on [Redacted], at which time all parties and counsel must appear in-person, at which time the Court shall set dates for a Pre-Trial Conference and Trial to be held in this action; and it is further
ORDERED that any relief requested not expressly granted herein is denied.
The foregoing constitutes the Decision and Order of the Court.
Dated: June 3, 2024
White Plains, New York
ENTER:
Hon. James L. Hyer, J.S.C.